```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF ILLINOIS
            EASTERN DIVISION
```

| | |
|---|---|
| **TRUSTEES OF THE WILL COUNTY CARPENTERS, LOCAL 174, HEALTH AND WELFARE FUND,**<br><br>Appellants,<br><br>v.<br><br>**JOHN P. COONEY,**<br><br>Appellee. | Case No. 14 C 9222<br><br>Judge Harry D. Leinenweber<br><br>*Case USBC No. 13 A 373*<br>*Appeal from the United States Bankruptcy Court, Northern District of Illinois, Eastern Division* |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal of a bankruptcy court order granting fees and costs pursuant to 11 U.S.C § 523(d) against Appellants Trustees of the Will County Carpenters, Local 174, Health and Welfare Fund ("the Fund"). For the reasons stated herein, the Bankruptcy Court's Order is affirmed.

### I. BACKGROUND

Appellee John Cooney ("Cooney") served as general counsel and management for Avenue, Inc. and Avenue Premier. The CEO of the companies directed Cooney to apply for membership in Local 174 to obtain health insurance through the Fund. When the Fund learned that Cooney was an attorney receiving coverage, the Fund reported Cooney to the Attorney Registration and Disciplinary

Commission (the "ARDC"). The Fund maintained that coverage was limited to bargaining unit carpenters and managers who were promoted after working as bargaining unit carpenters. The ARDC charged Cooney with fraudulent conduct under Illinois Rule of Professional Conduct 8.4 and bringing the legal profession into disrepute under Illinois Supreme Court Rule 770. Cooney stipulated to the lesser offense under Rule 770 and was reprimanded by the ARDC for a "lapse of character and care."

Cooney filed for Chapter 7 on November 20, 2011. The Fund filed an adversary complaint against Cooney alleging that the monies owed the Fund should be denied discharge because they were incurred through false pretenses, false representation, or actual fraud pursuant to 11 U.S.C. § 523(a)(2). Following a two-day trial, the Bankruptcy Court found that the Fund failed to prove fraud and that Cooney's debt was dischargeable. Cooney then filed a Motion seeking fees and costs under § 523(d). The Bankruptcy Court granted that Motion, finding that the debt at issue was a consumer debt, the Fund's position was not substantially justified, and no special circumstances existed to make the award unjust.

The Fund appeals the Bankruptcy Court's Order awarding Cooney fees and costs and has raised the following issues on appeal: (1) whether the Bankruptcy Court erred in awarding attorneys' fees to a *pro se* defendant-debtor; (2) whether the

Bankruptcy Court erred in awarding attorneys' fees to the *pro se* defendant-debtor's partner, where not supported by a separate affidavit from the partner; (3) whether the Bankruptcy Court erred in determining that the case represents a consumer debt eligible for recovery of attorneys' fees; (4) whether ERISA Trustees-Fiduciaries acting for the benefit of participants and beneficiaries constitutes a special circumstance making the award unjust; and (5) whether the Bankruptcy Court erred in concluding that the Fund's position was not substantially justified.

## II. STANDARD OF REVIEW

A bankruptcy court's "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Mungo v. Taylor,* 355 F.3d 969, 974 (7th Cir. 2004). The bankruptcy court's rulings on questions of law, as well as its resolution of mixed questions of law and fact, are reviewed *de novo. Id.*

## III. ANALYSIS

### A. *Pro Se* Attorneys' Fees

Section 523(d) of the Bankruptcy Code provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for,

> the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d). Cooney, an attorney, initially defended the underlying case himself, then obtained the services of his partner to prepare for and try the case. The Fund argues that § 523(d) should prohibit *pro se* debtors from recovering attorneys' fees because the statute from which § 523(d)'s language originates prohibits awarding *pro se* attorneys' fees. The fee provision in the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, provides some of the basis for § 523(d). *In re Hingson,* 954 F.2d 428, 429 (7th Cir. 1992). Although the language is indeed similar, the reasoning behind the EAJA's prohibition against *pro se* attorneys' fees does not apply in the § 523(d) context.

The plain meaning of a statute should control except in the rare cases in which the literal application of the statute would produce a result at odds with the intentions of its drafters. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242 (1989). The language of § 523(d) does not limit an award of costs and fees to private attorneys. Furthermore, § 523(d) was intended to discourage creditors from initiating meritless actions based on § 523(a)(2) in the hope of obtaining a settlement from an honest debtor, thereby impairing the debtor's

fresh start.  H.R. Rep. 95-595, at 365 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6321; *see also, In re Machuca,* 483 B.R. 726, 734 (B.A.P. 9th Cir. 2012).

Additionally, the EAJA's fee provision functions differently from § 523(d).  Under the EAJA, *plaintiffs* are awarded attorneys' fees to *encourage* competent counsel to take those cases and help plaintiffs pursue their claims and vindicate their rights.  *Kooritzky v. Herman,* 178 F.3d 1315, 1318 (D.C. Cir. 1999).  This is the opposite of § 523(d)'s purpose, which is to award attorneys' fees to *defendant-debtors* to *discourage* creditors from pursuing meritless claims.  The import of this difference is obvious; prohibiting *pro se* plaintiffs from recovering attorneys' fees in EAJA cases *furthers* the EAJA fee provision's purpose, while prohibiting *pro se* defendant-debtors from recovering attorneys' fees under § 523(d) *defeats* that provision's purpose.  Thus, EAJA cases prohibiting *pro se* litigants from recovering attorneys' fees do not apply in the § 523(d) context.  The Bankruptcy Court thoroughly reviewed Cooney's fee request, which the Bankruptcy Court reduced from $70,770 in fees and $11,902.94 in costs to just $57,900 in fees and $9,259.69 in costs.  Thus, the Court affirms the Bankruptcy Court's decision to award attorneys' fees to Cooney.

**B. Cooney's Law Partner's Failure to File a Fee Affidavit**

In its order, the Bankruptcy Court addressed the Fund's objection to awarding attorneys' fees to Cooney's partner without a separate affidavit from the partner as to the accuracy of his time entries. The Bankruptcy Court concluded that although an affidavit is required, there is no rule that requires an affidavit from each person performing services. Order at 17; *see also,* Fed. R. Bankr. P. 2016; L. Bankr. R. 5082-1. The Fund did not address this issue in its briefing and therefore waived it.

**C. Consumer Debt**

The Fund argues that Cooney's debt, consisting of reimbursements of medical and prescription bills paid by the Fund on Cooney's behalf, is not consumer debt, but business debt rendering § 523(d) inapplicable. The Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The Bankruptcy Court found that the debt was a consumer debt under this definition. The Court reviews that finding for clear error. *See, Ojeda v. Goldberg,* 599 F.3d 712, 716 (7th Cir. 2010).

The Fund argues that § 523(d) should not apply because Cooney's debt was driven by business motive. The Fund asserts that since Cooney was an attorney and manager with the Avenue

companies and Cooney already had insurance with Avenue, Cooney wanted union health benefits to improve Avenue's bottom line. The Fund argues that this case is analogous to *Swartz v. Strausbaugh,* 376 B.R. 631 (S.D. Ohio 2007), where a managing partner of a partnership misappropriated funds for personal expenses he would have otherwise incurred. The *Swartz* court held that even though the debt incurred was for personal expenses, the debtor had a profit motive rendering § 523(d) inapplicable. *Id.* at 638. *Swartz* is distinguishable, however, because the Bankruptcy Court found no evidence that Cooney obtained benefits from the Fund to improve Avenue's bottom line. Accordingly, the Court affirms the Bankruptcy Court's finding that Cooney's debt was a consumer debt.

**D. Special Circumstance Making Award of Fees Unjust**

The Fund next argues that special circumstances make awarding fees in this case unjust because the Fund is an ERISA Fund with a fiduciary duty to pursue contributions. In so arguing, the fund relies primarily on *Russell*. *See, Carpenters S. Cal. Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir. 1984). The Fund also raised this issue with the Bankruptcy Court, which concluded that *Russell* does more to hurt than help the Fund's argument. Order at 12. This Court agrees. Although not a bankruptcy case, the *Russell* case discussed awarding attorneys' fees to an employer who defends a suit against an

ERISA fiduciary under 29 U.S.C. § 1415. *Russell,* 726 F.2d at 1415. The court affirmed the lower court's award of attorneys' fees. Indeed, § 1132(g)(1), the statute awarding attorneys' fees in *Russell,* provides that either party may be eligible a fee award in some circumstances. Therefore, the status of an ERISA fiduciary does not make an award of fees unjust under that statute.

The Fund argues that the *Hummell* factors discussed in *Russell* should apply in a court's determination of attorneys' fees under § 523(d) and compel the conclusion that such an award would be unjust. *Russell,* 726 F.2d at 1415; *Hummell v. S. E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980). The Bankruptcy Court rejected this argument, reasoning that since the underlying statute, 29 U.S.C. § 1132(g)(1), does not preclude fee awards against ERISA fiduciaries, a fee award under § 523(d) also does not preclude awards against ERISA fiduciaries.

The Bankruptcy Court is right. ERISA explicitly states that its provisions do not override other federal laws: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law." 29 U.S.C. § 1144. Although in this case there are no ERISA provisions that directly conflict with § 523(d), the Fund

maintains that if the *Hummell* factors were applied, an award of fees against the Fund would be unjust. But if ERISA provisions do not supersede the Bankruptcy Code, certainly ERISA-based cases like *Hummell* do not supersede the Bankruptcy Code either. Thus, the Court affirms the Bankruptcy Court's finding that no special circumstances apply in this case to preclude an award of attorneys' fees.

**E. Whether the Fund's Case was Substantially Justified**

Finally, the Fund argues that the Bankruptcy Court should not have allowed a fee award in this case because the Fund's position was "substantially justified." Under § 523(d), an attorneys' fee award is mandatory as long as: (1) the creditor's position was not substantially justified; and (2) no special circumstances exist that would make the award unjust. Because the Court has already affirmed the Bankruptcy Court's finding of no special circumstances, it must now determine whether the Bankruptcy Court was correct that the Fund's position was not substantially justified.

Both the EAJA and § 523(d) use the phrase "substantially justified," and the Seventh Circuit applies the EAJA's definition to § 523(d). *See, In re Hingson*, 954 F.2d at 429. Under the EAJA, "substantially justified" means "justified to a degree that would satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). The Court reviews the

Bankruptcy Court's finding that the Fund was not substantially justified for abuse of discretion. *See, id* at 557–63.

On appeal, the Fund argues that it had a substantially justified basis for its case against Cooney based on Cooney's ARDC negotiations, even though the Fund was not a party to those negotiations. The Fund argues that Cooney's stipulation to a lesser offense implies some culpability as to the greater offense of fraud. The Fund attempted to argue this to the Bankruptcy Court as well. The Fund, however, knows that this is not the case. In its briefing before the Bankruptcy Court, the Fund actually argued that "'precedent demonstrates that guilty pleas and other forms of acceptance of liability for lesser offenses create no inferences surrounding guilt or liability for greater offenses.'" Order at 10 (quoting the Fund's supplemental response). The Bankruptcy Court duly noted that the Fund cannot "have it both ways," and this Court agrees. Therefore, the Bankruptcy Court's finding that the Fund was not substantially justified in bringing suit based upon Cooney's ARDC negotiations is affirmed.

The Fund's underlying claim of fraud was also based on Cooney's alleged misrepresentation on his union membership application. The Bankruptcy Court concluded after a two-day trial that there was no evidence that Cooney participated in any false, misleading, or deceptive acts. The Fund set out to prove

that Cooney misrepresented himself as a carpenter because the box in the "craft" section of Cooney's union membership application had the option "carpenter" selected. Other choices included "local government," "federal government," or "state government." The evidence at trial, however, showed that Cooney was presented with a union membership application with the craft section pre-filled with the "carpenter" box checked. The President of the union — the Fund's own witness — testified that he explained to Cooney that the box simply identifies the entity sponsoring the applicant for the craft. The Bankruptcy Court relied heavily on this testimony, noting that "it was the testimony of [the Fund's] own witnesses that led to judgment in Cooney's favor," and correctly so. *See, id.* This Court affirms the Bankruptcy Court's finding that the Fund's position was not justified based on the fact that it was the Fund's own witnesses that disproved its case.

Finally, there is the disputed matter regarding evidence of a Participation Agreement that the Fund introduced in its Reply Brief to show that the Fund's attorneys obtained their own health insurance from a union. Cooney filed a Motion to Strike that portion of the reply brief. The Fund raised the issue of the participation agreement because it felt that the agreement rebutted what the Fund considers to be a key part of the Bankruptcy Court's decision. The Fund argues that since the

that Cooney misrepresented himself as a carpenter because the box in the "craft" section of Cooney's union membership application had the option "carpenter" selected. Other choices included "local government," "federal government," or "state government." The evidence at trial, however, showed that Cooney was presented with a union membership application with the craft section pre-filled with the "carpenter" box checked. The President of the union — the Fund's own witness — testified that he explained to Cooney that the box simply identifies the entity sponsoring the applicant for the craft. The Bankruptcy Court relied heavily on this testimony, noting that "it was the testimony of [the Fund's] own witnesses that led to judgment in Cooney's favor," and correctly so. *See, id.* This Court affirms the Bankruptcy Court's finding that the Fund's position was not justified based on the fact that it was the Fund's own witnesses that disproved its case.

Finally, there is the disputed matter regarding evidence of a Participation Agreement that the Fund introduced in its Reply Brief to show that the Fund's attorneys obtained their own health insurance from a union. Cooney filed a Motion to Strike that portion of the reply brief. The Fund raised the issue of the participation agreement because it felt that the agreement rebutted what the Fund considers to be a key part of the Bankruptcy Court's decision. The Fund argues that since the

that Cooney misrepresented himself as a carpenter because the box in the "craft" section of Cooney's union membership application had the option "carpenter" selected. Other choices included "local government," "federal government," or "state government." The evidence at trial, however, showed that Cooney was presented with a union membership application with the craft section pre-filled with the "carpenter" box checked. The President of the union — the Fund's own witness — testified that he explained to Cooney that the box simply identifies the entity sponsoring the applicant for the craft. The Bankruptcy Court relied heavily on this testimony, noting that "it was the testimony of [the Fund's] own witnesses that led to judgment in Cooney's favor," and correctly so. *See, id.* This Court affirms the Bankruptcy Court's finding that the Fund's position was not justified based on the fact that it was the Fund's own witnesses that disproved its case.

Finally, there is the disputed matter regarding evidence of a Participation Agreement that the Fund introduced in its Reply Brief to show that the Fund's attorneys obtained their own health insurance from a union. Cooney filed a Motion to Strike that portion of the reply brief. The Fund raised the issue of the participation agreement because it felt that the agreement rebutted what the Fund considers to be a key part of the Bankruptcy Court's decision. The Fund argues that since the

Bankruptcy Court referred to its attorneys obtaining their own insurance through a union as "the final nail in the coffin," that it was a pivotal piece of evidence in the Bankruptcy Court's conclusion that the Fund's claim was unjustified. The Court granted Cooney leave to file a supplemental brief on this issue, but the Court does not need to consider it because the Fund's argument is baseless.

It is clear that the Bankruptcy Court did not rest its decision that the Fund's case was unjustified on this evidence; it was mentioned in the Bankruptcy Court's order as merely a metaphor. In other words, the proverbial coffin that buried the Fund's substantial justification argument was already designed, built, and all but complete. This last matter regarding the Fund's own attorneys obtaining insurance from a union despite crying foul when Cooney obtained insurance through a union served only to cap off an already thorough opinion that the Fund's position was not substantially justified.

Moreover, even if the Court were to agree with the Fund that its participation agreement proved that the Bankruptcy Court erred in commenting on the Fund's attorneys' insurance, other evidence in this case is more than enough to show that the Fund had a less-than-justified basis in law and fact for bringing a fraud suit against Cooney. It is clear that the Bankruptcy Court rested its decision on the Fund's misplaced

reliance on Cooney's ARDC negotiations and the fact that the Fund's own witnesses unraveled the Fund's case. Therefore, the Court affirms the Bankruptcy Court's finding that the Fund's § 523(a)(2) claim was not substantially justified.

## IV. CONCLUSION

For the reasons stated herein, the decision of the Bankruptcy Court is affirmed.

**IT IS SO ORDERED.**

                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

Dated:5/29/2015